## BONSALL v. PLATT.

(Circuit Court of Appeals, Second Circuit. April 4, 1907.)

### No. 203.

CORPORATIONS—CONTRACT FOR SERVICES—FORMATION OF CORPORATION—EFFECT.

Defendant employed plaintiff to assist him in building up a business, under a parol contract that plaintiff was to draw his necessary expenses, and that the balance of his compensation should be determined at a future time, when plaintiff had proved his worth in the business, and that plaintiff should consider that he was "in with" defendant in the business, and that it was half his own. After the business commenced to succeed, defendant formed a corporation, in order to better conduct the same, and became the owner of all the stock; plaintiff being elected president, treasurer, and one of the directors, which office he continued to hold until he resigned, in 1903. No action was ever taken by the corporation with reference to the payment of salaries, and no salary was ever fixed during plaintiff's employment. *Held*, that plaintiff's services, rendered after the organization of the corporation, were rendered under the original contract, and that the organization of the corporation did not relieve defendant from liability therefor.

In Error to the Circuit Court of the United States for the Southern District of New York.

F. W. Russell, Louis Lowenstein, and Wentworth, Lowenstein & Stern, for plaintiff in error.

R. B. Honeyman and A. Parker Smith, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The only error claimed herein is in the denial by the trial court of defendant's motion to dismiss the complaint, on the ground that plaintiff had failed to make out a case against the defendant Bonsall, because the services for which a recovery was claimed were rendered, not to him, but to the defendant corporation, the Innovation Trunk Company. The action was brought against both defendants, but at the close of the trial the court held that there was no joint contract on the part of defendants, and required plaintiff to elect as to which of the defendants he would claim was liable for the services rendered. The plaintiff elected to hold the defendant Bonsall. The complaint was amended accordingly, and was dismissed as against the Innovation Trunk Company. No question is raised as to the value of the services rendered, and both defendants are solvent.

The evidence for the plaintiff material to the question raised by defendant is as follows: Defendant, claiming to be the inventor of a new trunk, had been acquainted with the plaintiff for some 12 years, and in June, 1889, the following conversation took place between the parties:

"He [Bonsall] told me he wanted me to come with him and help him build up the business; that he would make it an object for me to do so; that he would properly compensate me, if the business was a success. I told him that I would accept his offer. We did not have any conversation about my expenses until I came with him at his office, and then we talked about the matter, and he said, that the business was small at the time, and that he did not want to add any more expense than he could help; but he told me to draw what I considered necessary to use for my expenses. I had no other conversation with him on that subject at that time, further than he stated that I would get my compensation at a future time after I had proved my worth in the business. He told me that I could consider that I was really in with him in the business, and that I could consider it half my own."

Plaintiff took charge of the business, and supervised and managed it and made it successful. On March 5, 1900, defendant caused the defendant corporation to be organized, and became the owner of all the stock. Plaintiff was elected president, treasurer, and one of the directors, and continued to be president until November 17, 1903. No action was ever taken by the corporation with reference to the payment of salaries, and the plaintiff and defendant never had any other material conversation in regard to compensation, except on one occasion, when they were returning together from California, in March, 1903. The plaintiff then suggested that he would be better pleased if he knew exactly what his compensation was to be. Thereupon, according to plaintiff's testimony, the following conversation took place:

" 'Now I [Bonsall] am trusting you, and I expect you to trust me, and when I decide it is time to divide this "rake off," ' as he called it, 'in the business, I will do so; but you can rest assured you will be properly taken care of.' * * * I told Mr. Bonsall I had drawn for the past year about $2,500, and he said he didn't give a damn if it was twice that. He expected me to live well and dress well. I was president of the company, and I was to hold my end up, and go around and see people, and he also said I had worked hard enough to enjoy a little let up, and he intended I should get it, and he then stated I was to go to Europe, if he could arrange it. * * * I told him: 'This arrangement is not very satisfactory to me. In case of your death I am left out in the cold.' And he said he had arranged his will so that was all taken care of."

In November, 1903, as a result of a quarrel between the parties having no connection with this business, the plaintiff resigned. He received no fixed salary, as such, during the time of his employment; but, after the incorporation of the company, he drew some $10,000 or $12,000, which he charged himself with, as salary or expenses. No claim is made for services prior to the incorporation of the defendant company.

Counsel for defendant, in support of his argument, has elaborately discussed various well-settled propositions of law, claiming thereunder that, as the plaintiff was employed by the corporation, as such he could not have been employed by defendant as an individual, or as the owner of the whole stock; that such a contract by defendant would be void as contrary to public policy; and that the plaintiff, as president of the corporation, and having brought suit against it, was estopped from questioning its separate entity.

Jones v. Williams, 139 Mo. 1, 39 S. W. 486, 40 S. W. 353, 37 L. R. A. 682, 61 Am. St. Rep. 436, chiefly relied upon by counsel for defendant, is not in point. There, the defendant corporation had been in existence for several years when the plaintiff made his contract with Pulitzer, who was practically the sole owner of the property of the corporation. The court found as a fact that when the contract was made the plaintiff supposed he was dealing with one who had authority to act for the corporation, and that both "parties who signed the contract unquestionably intended that the corporation should be bound." The court further found that Pulitzer had authority to make said contract on behalf of the corporation, and that the plaintiff knew this fact. In these circumstances, the court affirmed the decree of the court below enjoining the corporation, which had accepted plaintiff's services, from terminating the contract made with him by Pulitzer on behalf of the corporation.

The argument of defendant proceeds upon the doctrine that, where a corporation has accepted services rendered to it under a contract, it cannot escape liability by a claim that the contract was made without its authority. But we are not called upon to determine whether, if plaintiff had elected to hold the corporation, he might have availed himself of this doctrine upon the theory of ratification and estoppel. Here, the plaintiff stands upon his original contract with defendant Bonsall, which, so far as appears, has never been modified in any way by either party; and, in the disposition of this case, it is unnecessary to consider any of the other questions raised, because, upon the assumed facts, as stated above, they can have no bearing upon the question of fact, which the court properly left to the jury. This question was whether the plaintiff was rendering the services under the original agreement made with the defendant Bonsall, or under a new and independent contract between the plaintiff and the defendant corporation, whereby the plaintiff released the defendant Bonsall from further liability, and agreed thereafter to look to the corporation for payment for his services. The evidence amply supported the finding of the jury, on which their verdict was based, that all the services were rendered under the original contract with the defendant Bonsall. Evidently the organization of the corporation, in which the defendant

owned all the stock, was merely a convenient and proper method adopted by him for carrying on his business. There is no question here of novation or public policy, or of the rights of minority stockholders, or of third persons as against either defendant. Under the original contract, the plaintiff was employed to help the defendant to build up the defendant's trunk business in whatever way defendant chose to carry it on, and plaintiff was to get his compensation in the future, when the value of his services had been determined. If the defendant saw fit to have said business run for his benefit under a corporate organization, and in order to accomplish this purpose the plaintiff became, at his request, the president and treasurer and a director of the corporation, these acts were merely incident to, and in furtherance of, plaintiff's original employment, and in accordance with the wishes of his employer. It does not appear that there was any change in the method of carrying on the business.

We cannot accede to the proposition that an individual having large business interests, who employs agents to carry on his business, can relieve himself from his individual responsibility for their services merely by creating a corporation and causing them to be chosen as officers. In order to establish such a claim of change of liability, there must also be evidence of a novation, either express or implied.

Nor can we accede to the highly technical argument that the mere change in form of carrying on the business through a corporation necessarily, as a matter of law, modified the existing respective rights and obligations of the plaintiff and defendant Bonsall. The very fact that, while the corporation was a separate entity, no new contract for services was entered into with the plaintiff, is of itself indicative of the understanding of both parties that the old contract continued in existence.

We conclude that the evidence was sufficient to support the verdict, and that the court properly submitted it to the jury.

The judgment is affirmed.